IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL SITE SIMULATOR TO LOCATE THE CELLULAR DEVICE ASSIGNED CALL NUMBER **615-838-1373**, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY (IMSI) **310280123147999** | Case No. 1:25-mj- ⎤<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Robert Barrett, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **615-838-1373**, (the "**Target Cellular Device**"), which is described in Attachment A.

2. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI) and have been employed since September 2017. I am currently assigned to the FBI Nashville Division, Violent Crime Squad, and am assigned to investigate criminal matters involving Crimes Against Children, including but not limited to, the illegal possession, production, distribution, and receipt of child pornography in violation of 18 U.S.C. §§ 2251, 2252 and 2252A, as well as the sexual exploitation of minors, including but not limited to, violations of 18 U.S.C. §§ 1591(a) and (b)(1), 2251, 2422(b), and 2423(a) and interstate or foreign travel with intent to engage in a sexual act with a juvenile, which is a violation of 18 U.S.C. § 2423(b).

1

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because the Target Cellular Device is currently believed to be located inside this district. A review of cellular telephone data associated with the Target Cellular Device as of January 15, 2025, revealed the phone to be located in the Eastern District of Tennessee's jurisdiction. Pursuant to Rule 41(b)(2), law enforcement may use the technique described in Attachment B outside the district provided the device is within the district when the warrant is issued.

5. Except where otherwise noted, the information set forth in this Affidavit has been provided to me directly or indirectly by other Special Agents, Task Force Officers, or other law enforcement officers (hereinafter collectively referred to as "Agents"). Unless otherwise noted, wherever I state that a statement was made, the information was provided by an Agent to whom I have spoken or whose report I have read. All statements related herein, whether of Agents or not, are related in substance and in part, and are not verbatim unless otherwise indicated.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Jacobi Varner (VARNER) is the subject of a federal arrest warrant. VARNER was charged with violations of 18 U.S.C. § 1470: Transfer of Obscene Material to Individuals Under the Age of Sixteen, 18 U.S.C. §§ 2251(a), (e): Attempted Sexual Exploitation of Minors, 18 U.S.C. § 2422(b): Attempted Coercion/Enticement to Engage in Prostitution/ Unlawful Sexual Activity and is the subject of an arrest warrant issued on January 8, 2025. On January 15, 2025, VARNER was made aware of these charges and stated he would not turn himself in. There is also probable cause to

2

believe that the **Target Cellular Device's** location will assist law enforcement in arresting Varner, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. On or about January 14, 2025, FBI Nashville **("FBI")** executed a federal search warrant on 567 Tulip Grove Road, Nashville, Tennessee ("TULIP"), which was believed to be the residence where VARNER resided. The federal search warrant was in relation to the outstanding federal warrants for VARNER. More specifically, the federal search warrant was issued in relation to violations of 18 U.S.C. § 1470: Transfer of Obscene Material to Individuals Under the Age of Sixteen 18 U.S.C. §§ 2251(a), (e): Attempted Sexual Exploitation of Minors, 18 U.S.C. § 2422(b): Attempted Coercion/Enticement to Engage in Prostitution/ Unlawful Sexual Activity and in violations of 18 U.S.C. §§2252: Transportation, Receipt, Distribution, or Possession of Visual Depictions of Minors engaged in Sexually Explicit Conduct or Child Pornography.

9. After the execution of the federal search warrant on TULIP, it was determined VARNER was not present. FBI interviewed occupants of the resident and a known associate (PER1) in the vicinity of a possible secondary residence of VARNER at 4100 Central Pike, Unit 1214, Hermitage, Tennessee (CENTRAL).

### Interview at CENTRAL

10. FBI interviewed PER1 in the vicinity of CENTRAL. PER1 was the mother of some of VARNER's children. PER1 stated that VARNER was at CENTRAL on January 14, 2025.

Sometime around 6AM VARNER was made aware of Law Enforcement activity at TULIP. PER1 stated they were in the bathtub sometime around five or six in the morning. When PER1 exited the bathtub VARNER was gone. PER1 heard VARNER say he would "be back". PER1 had a phone number for VARNER but did not want to provide the phone number at this time. PER1 believed that VARNER might have gone to a residence down the road from CENTRAL.

### Interview at TULIP

11. FBI interviewed occupants at TULIP during the search of TULIP. One of the occupants that was interviewed by FBI was the mother of VARNER ("MOTHER"). During the interview, FBI informed MOTHER that they wanted VARNER to be taken into custody in the safest possible manner. MOTHER informed FBI that VARNER would not turn himself in and that Law Enforcement would have to "hurt" VARNER (referring to taking VARNER into custody). During the interview, MOTHER made multiple phone calls. On at least two occasions, FBI believed that MOTHER spoke to VARNER. On at least one of the occasions, MOTHER referred to the recipient of the phone call as "JOCOBI" and/or COBI". On at least one of the phone calls, MOTHER placed the phone call on speaker and Agents spoke to who they believed was VARNER. FBI informed VARNER that he had outstanding federal arrest warrants and that they were willing to take him into custody on his terms. VARNER wanted to know how much time he was going to get. VARNER stated to FBI that he was not going back to jail and did not agree to meet with FBI about his outstanding federal warrants. After the phone call was terminated, MOTHER informed FBI that VARNER would not turn himself in.

### Review of MOTHER's Cell Phone

12. Pursuant to a lawfully obtained federal search warrant of TULIP, to include electronic devices, FBI conducted an on-scene search of MOTHER's cell phone. The most recent phone call that was believed to belong to VARNER under the contact name "My Baby Boy" had

4

the mobile telephone number of **615-838-1373** ("TARGET TELEPHONE").

## CAST Review

13. On or about January 14, 2025, a member of the FBI Cellular Analysis Survey Team (CAST) analyzed cell phone records for the **Target Cellular Device.** Members of CAST are agents and task force officers who specialize in the review and analysis of cell site records.

14. The FBI CAST Agent reviewed historical records for the time period December 15, 2024, through January 15, 2025. In addition, AT&T initiated a GPS ping allowing law enforcement to collect real-time location information for the **Target Cellular Device.** [1]

15. A preliminary analysis of the historical records for the **Target Cellular Device** revealed cell site activations in Chattanooga and other surrounding areas within the Eastern District. Based on an area of interest identified by the FBI CAST Agents, **Target Cellular Device** was located in Chattanooga, Tennessee, on January 14, 2025.

## MANNER OF EXECUTION

16. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

17. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Cellular Device** or receiving signals from nearby cellular devices, including the **Target Cellular**

---

[1] The GPS ping has only enabled law enforcement to determine the location of the **Target Cellular Device** with an accuracy range of 135 to 2000 meters. The authorization requested in this warrant will reveal a more precise location.

**Device**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the **Target Cellular Device** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Cellular Device** and use that information to determine the **Target Cellular Device's** location, even if it is located inside a house, apartment, or other building.

18. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Cellular Device**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Cellular Device**, and law enforcement will limit collection of information from devices other than the **Target Cellular Device**. To the extent that any information from a cellular device other than the **Target Cellular Device** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Cellular Device** from all other cellular devices.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal

6

Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the **Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. See 18 U.S.C. § 3103a(b)(l). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

23. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

SIGNATURES ON FOLLOWING PAGE

Respectfully submitted,

_____
Robert Barrett
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me
On: January 15, 2025.

_____
HON. CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

8

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number **615-838-1373**, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY (IMSI) **310280123147999**, whose wireless provider is AT&T.

# ATTACHMENT B

Pursuant to an investigation of Jacobi Varner for a violations of violations of 18 U.S.C. § 1470: Transfer of Obscene Material to Individuals Under the Age of Sixteen, 18 U.S.C. §§ 2251(a), (e): Attempted Sexual Exploitation of Minors, 18 U.S.C. § 2422(b): Attempted Coercion/Enticement to Engage in Prostitution/ Unlawful Sexual Activity, this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

for a period of thirty days, during all times of day and night. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).